[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Re Motions # 120 and #121
The court issued its Memorandum of Decision on November 29, 2000. On December 11, 2000, the Plaintiff filed a Motion for Relief from Automatic Stay which is denied. On December 15, 2000, the Defendant filed a Motion to Reargue and/or Reconsider and/or Articulate. The Motion to Reargue and the Motion to Reconsider are granted but the relief requested in said motions is denied. The court's response to the Motion to Articulate follows.
The parties were married on April 8, 1978, a total of 22 years, and separated in May of 2000. By complaint dated May 18, 2000, the Wife instituted this action claiming a dissolution of marriage, child support, custody, alimony, and other relief. The Husband appeared through CT Page 870 counsel, filed an answer and cross-complaint claiming a dissolution of marriage, custody, support, an equitable division of property and debts, and other relief. The parties were fully heard over one day of trial.
Two children were born to the Wife, issue of the marriage, only one being a minor at the time of trial, to wit: Patrick, born June 8, 1983, a senior in high school, who will reach his majority in 5 months. The older child suffered from serious emotional problems and at one time was hospitalized for depression. Throughout the marriage it was the Wife's responsibility to care for the children for which she received little help from her Husband. She had to regularly protect the children from his anger and drinking. Both children suffered from his conduct. The son has chosen to reside with the Husband for the remaining months of his minority.
The Wife, a high school graduate, is 43 years of age and in reasonably good health although she did require therapy during the marriage. She works as a receptionist in a doctor's office earning $585.00 per week.
The Husband, a high school graduate with 2 years of college, is 45 years of age and in reasonably good health. He is in regular therapy since learning of his Wife's affaire with his brother. During the first 10 years of the marriage he was an active alcoholic which contributed to many problems. His main employment is as a school custodian for the City of West Haven earning $488.19 per week. He also has a cleaning business from which he reported earnings of $315.38 per week. His total weekly income is found to be $803.57.
Neither party testified to any assets owned from before the marriage, although there was considerable testimony about the former marital residence which was acquired from the Wife's mother's estate in 1996. Apparently, the Wife and her two sisters each had a one-third interest in the property. The two sisters waived their rights to the residence in the probate documents introduced into evidence. The property was then sold to the Husband and Wife for $132,000.00, much less than the fair market value. The Wife claimed that one sister consented to the sale with the understanding she would receive $20,000.00 when the property was sold. This claim was unsubstantiated and, if it was in fact a debt, it properly should be the responsibility of the Wife. The Husband testified that he knew the sister had an interest but he did not remember how much. In any event, he claimed the sister said "don't worry about it". The properly was subsequently sold, and after numerous expenses and debts were paid, resulted in an escrow account being established in the amount of $34,940.03.
In addition to the escrow account, the Husband listed a 401k plan of CT Page 871 $7,000.00. No documentary evidence of the account was produced by either party as to the exact current balance. The Husband claimed that his business had no value but he did testify that equipment was worth $5-6,000.00 and a trailer $2,000.00. In addition, there was approximately $10,000 in the account including the amount reserved for taxes. While the court cannot with certainty determine the fair market value of the business, it is clearly worth more than the "no value" listed on the Husband's affidavit. The Wife listed personal property of $2,000.00 and the Husband listed $1,200.00 for his personal property including seven or eight guns.
As for liabilities, the Husband had none except for counsel fees incurred in-the dissolution of marriage action. The Wife listed, in addition to her counsel fees, the $20,000.00 debt to her sister Leslie Evans and a $9,000.00 debt consolidation loan. She testified that some of the debts which were "consolidated", preceded the filing of the divorce. The court determined that the Wife should be responsible for the debt consolidation loan, as well as her sister's alleged debt, and took that into consideration in the allocation of the escrow account.
The breakdown of the marriage was clearly the fault of the Husband. He was an alcoholic for the first 10 years of the marriage during which time he caused numerous problems for the family. He would pass out frequently, was always angry, intimidated the Wife and children, demanded sex in his inebriated condition, offered the Wife no emotional support, was verbally abusive, yelled and swore regularly. The Wife lacked the strength to resist him to take her two young children and leave the clearly dysfunctional marriage. When he eventually stopped drinking, he was more difficult to live with but in other ways. He was constantly angry which contributed to the major emotional problems suffered by the older child who had to be hospitalized for depression.
To the considerable discredit of the Wife, in May of 2000, she commenced an affaire with the Husband's brother. When it became known to the Husband, he became justifiably angry. He struck the Wife, broke furniture, pulled the phone out of the wall, and went to the basement to retrieve his guns. The Wife fled and ultimately obtained a restraining order. Although the affaire continues today, the court is satisfied that the marriage broke down long before the affaire began.
Under the totality of the circumstances of this case, after observing the demeanor of the parties, listening to their testimony, and reviewing the few exhibits, the court believed it was fair and equitable to order only nominal alimony and no child support for the remaining 5 months of the child's minority. The nominal alimony was in recognition of the clear causes for the breakdown of the marriage, but also in recognition of the CT Page 872 Wife's recent indiscretion. The deviation from the Child Support Guidelines was amended because of equitable factors. The earning capacities of both parties was also considered. As to the escrow account, it was awarded to the Wife because of her assumption of the debt consolidation loan, her contribution to the acquisition of the marital residence, and the clear culpability of the Husband in the marriage breakdown.
CUTSUMPAS, J.